## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**BRIAN WILLIAMS,**
        **Petitioner,**

**v.**                                                  **Case No.  4:08cv192/SPM/MD**

**WALTER MCNEIL,**
        **Respondent.**

_____

### REPORT AND RECOMMENDATION

**Before the court is an amended petition for writ of habeas corpus filed pursuant to  28 U.S.C. § 2254 (doc. 5).  Respondent has filed a response (doc. 16) to which petitioner has replied (doc. 21).  Petitioner has also filed a motion for summary judgment (doc. 22).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition and the motion for summary judgment are without merit and should be denied.**

## BACKGROUND AND PROCEDURAL HISTORY[1]

On May 7, 2000 Kelly Harper was murdered during a robbery.  Petitioner, Brian Williams, was charged by superceding indictment in the Circuit Court of Leon County, Florida with one count of first degree murder and one count of armed robbery.  One of the participants, Atikum Wondaferow, testified pursuant to a plea agreement with the state.  The agreement provided that he would testify truthfully in four trials, and the state would then decide what to do about his involvement.  His testimony formed the backbone of the state's case (doc. 14, ex. E, pp. 253-339)[2], and is summarized here.

Participants in the robbery and murder were Mr. Williams and four others, Wondaferow, Ivan Campbell, Reginald Kitchen, and Eric Thompson. According to Wondaferow, he and Campbell lived in a house in Tallahassee, Florida that Wondaferow was renting.  On the morning of the murder the two were sitting on the front porch trying to figure out how to get some marijuana.  They thought of Kelly Harper, who dealt in drugs, so Campbell called him.  Harper said he would come over in an hour.  At about that time Thompson drove up, with Mr. Williams and Kitchen in the car with him.  Mr. Williams said he wanted a half pound of marijuana also, so Campbell called Harper again.  Mr. Williams, Thompson and Kitchen came up to the porch, and Thompson asked where the weed was.  He also showed

---

[1]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  When a federal court examines the sufficiency of the evidence on review, the role of the court is not to reweigh the evidence or to determine whether the evidence established guilt beyond a reasonable doubt.  *Id.* at 319.  The proper inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, the federal court believes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.*  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a major part in the court's analysis.

[2]Hereafter all references to exhibits will be to those provided at doc. 16 unless otherwise noted.

Wondaferow a .38 revolver, saying it belonged to Mr. Williams.  There was then some discussion about how Kitchen had been involved in ripping off a drug dealer.  Kitchen pulled out a 9 mm pistol that he said also belonged to Mr. Williams.  Campbell then reported that he had talked to Harper, and that Harper would bring a half pound for Mr. Williams.  Campbell blurted out that Harper was soft and that they could rob him.   Thompson chimed in, agreeing.   Mr. Williams also agreed.  Wondaferow said that if they robbed Harper they should rob him (Wondaferow) also, so it didn't come back on him.

Kitchen was concerned that the man he had ripped off was after him, and wanted to get some ammunition for the pistol he was carrying.  All the men but Campbell, with Thompson driving, went to a pawn shop in Tallahassee.  Wondaferow and Mr. Williams went in and Wondaferow bought the ammunition.   Upon returning to Wondaferow's house, the men again discussed robbing Harper.  Wondaferow told them he wanted to purchase his small amount of marijuana first.

When Harper arrived Wondaferow and Campbell met him on the porch.  Wondaferow told Harper he wanted to do his deal first, but Harper said he wanted to do the larger deal (with Mr. Williams) first.   Thompson, who had disappeared, came to the front of the house, then started cursing and struck Wondaferow, knocking him down.  He told Wondaferow to "strip," meaning to give up what he had.  Wondaferow then saw Thompson pointing a .38 at Harper.  He put his head back down, heard feet shuffling, and then heard a gunshot.  He looked up and saw Harper bleeding and choking.

Campbell came out of the house.  Wondaferow called 911.  Campbell went through Harper's pockets and took a credit card and some cash.  He then looked through Harper's car and ran off.  When Wondaferow called 911 he told them that "somebody" came up on his porch and shot Harper, but he did not admit he knew who the killer was.

Mr. Williams also testified (*id*. at 546-651).  He told the jury that he was at home

in his apartment across from Wondaferow's house when he ran into Kitchen, Campbell and Thompson.  They were discussing "V," who was the person Kitchen allegedly ripped off.  Kitchen was afraid "V" was coming after him and needed ammunition for his Glock 9mm. semi-automatic pistol.

Talk turned to marijuana, and Mr. Williams said that he wanted to buy a half pound.  At Wondaferow's house he was in the living room when Thompson came up on the porch.  Kitchen was in the house with his Glock 9mm.  Mr. Williams heard somebody outside being slapped.  He peeked out the door and saw Thompson with a .38.  There was a gunshot, and Mr. Williams ran out the back.  He denied being involved in any discussions about robbing Harper, and did not know the others planned a robbery.

Mr. Williams also testified that he was not familiar with guns, and that Kitchen had told him he owned what he described as a 9 mm Glock.  Mr. Williams admitted he had a juvenile record from when he was 14.  He said he found a gun at school and turned it in, but got in trouble anyway.

The case was tried to a jury.  In a special interrogatory verdict the jury found him guilty of both charges, and further found that the discharge of a firearm caused death or great bodily harm, and that Mr. Williams possessed a firearm during the offenses, but did not discharge a firearm (ex. F).  He was sentenced to life in prison for the murder conviction and to 30 years with a 10 year minimum for the robbery, each sentence to be served concurrently.   The appellate court affirmed the convictions and sentences without written opinion (ex. M).

Mr. Williams filed a motion to correct illegal sentence pursuant to Fla.R.Crim.P. 3.800 which was summarily denied (exs. N, P).  He also filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 (ex. O).[3]  Evidentiary hearings were held on all claims raised in the 3.850 motion, and the court denied the

---

[3]Petitioner also filed an amended 3.850 motion, but later withdrew it (ex. R; ex. T, pp. 3-7).

motion from the bench (ex. T).  A written order adopting the bench ruling was subsequently entered (ex. U).  Mr. Williams' appeal of the order denying relief was unsuccessful (ex. Y).  After additional filings not relevant here, the instant petition for federal habeas relief was filed by mailbox rule on April 21, 2008.  Respondent concedes that the instant petition was timely filed (doc. 16, p. 6).

## LEGAL STANDARDS

### Section 2254 Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review

in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998),

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court

case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by

clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858-59, 168 L.Ed.2d 662 (2007); *Jones*, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel

All seven of the claims for relief presented here are grounded on petitioner's contention that he was denied his constitutional right to the effective assistance of counsel.   In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the

reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.   As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."   *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).   Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.   *Chandler* at 1314 (footnote omitted).   Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.   Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."   466 U.S. at 693, 104 S.Ct. at 2067.   Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.*, at 694, 104 S.Ct. at 2068.   Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.   *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).   In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.   *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

## PETITIONER'S GROUNDS FOR RELIEF

As noted above, Mr. Williams presents this court with seven grounds for relief, all based on claims of ineffective assistance of counsel.  They will be considered in the order presented.

1.    <u>Improperly eliciting testimony concerning petitioner's prior, inadmissible, juvenile record.</u>

Mr. Williams first faults his attorney for asking him on direct examination about a prior juvenile conviction, which was otherwise inadmissible.  Mr. Williams testified at trial.  A portion of the questions from his counsel, and his answers, was as follows:

[After questions and answers concerning going to the pawn shop with Wondaferow and others to purchase ammunition]

Q.    What is your familiarity with bullets and guns?

A.    I'm not too familiar with them.  If I see them, I may be able to recognize them, but I'm not too familiar with them.

Q.    Okay. You didn't on May 9th own a gun, did you?

A.    No, I didn't.

Q.    Did you have any guns ever in your apartment?

A.    No, I didn't.

Q.    You were seventeen years old in May of 2000, right?

A.    Yes.

Q.    You had previously been arrested in a juvenile case though, hadn't you?

A.    Yes.

Q.     For something to do with a gun?

A.     Yes.

Q.     Tell me what happened there?

A.     I guess – I think it was back in '98, '97 or '98.

Q.     How old were you then?

A.     I think 14 at the time, going on 15.

Q.     Okay.  And what happened?

A.     I had found a pistol at school and turned it in.

Q.     Uh-huh.

A.     And I was charged with it.

Q.     Okay.  And as a result of that, what happened to you?

A.     I went to the detention center for one day, and I was later put on house arrest for 21 days, and that was it.

Q.     And after a while you got off of that?

A.     After 21 days.

Q.     Okay.   And did you have to do any community service or anything involved with that?

A.     No, I didn't.

Q.     All right.  So other than when you were 14 and you found this gun at school, had you had any real - - had you had any other guns in your possession or anything like that?

A.     No, I didn't.

(Ex. E, pp. 561-63).   Mr. Williams contends that counsel informed the jury of the

otherwise inadmissible evidence that he had a juvenile record.  This, he says, prejudiced the jury against him.

### State Court Decision

This claim was raised in Mr. Williams' motion for post-conviction relief, and an evidentiary hearing was held.  The Rule 3.850 court rejected the claim.  It held that counsel's approach was sound trial strategy, and indeed a fairly common one.  Counsel wanted the jury to believe that Mr. Williams was unfamiliar with firearms, and he knew that if he took that approach directly, the state could bring out the prior incident, if not the juvenile conviction, on cross-examination.  The Rule 3.850 court also noted that the strategy worked.  The jury found that Mr. Williams possessed a firearm, but did not shoot it (ex. T, pp. 217-221).

### Federal Review of State Court Decision

The Rule 3.850 court found that counsel's decision to raise the matter of Mr. Williams' juvenile possession incident was a sound strategic one.  "Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component."  *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998); *Jackson v. Herring*, 42 F.3d 1350, 1357 (11th Cir. 1995). Whether a particular decision by counsel was a tactical one is a question of fact, *Hardwick v. Crosby*, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); *Jackson*, 42 F.3d at 1367; *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, *Hardwick* at 1163; *Jackson*, 42 F.3d at 1367; *Horton*, 941 F.2d at 1462, and habeas relief is mandated only where the trial court's decision was either contrary to, or an objectively unreasonable application of, clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1).  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation marks and citation omitted); *see also Waters v. Thomas*, 46 F.3d 1506, 1518-19 (11th Cir. 1995) (en banc) (observing that "[w]e cannot, and will not, second guess" the "strategic decisions trial counsel are called upon to make"). "[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy."  *Johnson v. Alabama,* 256 F.3d 1156, 1176 (11th Cir. 2001).

After all, "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *accord, e.g., Waters v. Thomas*, 46 F.3d at 1522 ("Three different defense attorneys might have defended Waters three different ways, and all of them might have defended him differently from the way the members of this Court would have, but it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance.").

Here the Rule 3.850 court found, as fact, that counsel's decision to bring up the juvenile incident was strategic, and this court defers to that determination because it is well supported by the evidence at the Rule 3.850 hearing.  The state court went on to conclude that counsel's strategic decision was reasonable, because had defense counsel not brought out the fact of Mr. Williams' prior possession of a firearm, the state would have and, under Florida law, such evidence would have been admitted:  "And whether or not the juvenile record itself could have been admitted, it is certain that [the prosecutor] could have asked Mr. Williams, well, if he had no experience in firearms, wasn't it true that he possessed a firearm at a certain period of time in the past that he could have gone into the details of it."  (Ex. T, p. 219).

The state court's legal conclusion was not objectively unreasonable.  The

state's position at trial was that Mr. Williams shot Mr. Harper.  Defense counsel wanted the jury to find otherwise - that Mr. Williams was there to purchase some marijuana but was not otherwise involved.  One way of doing so was to convince the jury that Mr. Williams was very young and knew nothing about firearms.  However, if Mr. Williams so testified, the door would be open to the state to cross-examine on the prior incident.  Under Florida law, Mr. Williams' juvenile record was inadmissible, but the facts underlying that record were not.  The state would have a free hand in having Mr. Williams admit that he possessed a gun earlier in his life.  Counsel's strategy of anticipating the state's cross-examination and attempting to defuse the issue by bringing it out on direct, was objectively reasonable.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Mr. Williams is not entitled to federal habeas relief, and the writ should not issue.

> 2.    Failure to object to prosecutorial misconduct

Mr. Williams next contends that his counsel should have objected to portions of the prosecutor's closing argument.  The prosecutor closed by going through the evidence in detail.  He concluded as follows:

> **This man participated in a robbery with a firearm.  This man, in the course of that robbery, killed somebody.  He killed Kelly Harper.  And your verdict should speak the truth.  On the evidence and the law it should speak that truth.  The man is guilty of what he's charged with. I ask you to do that, to render that verdict, not because you take pleasure in it or enjoy it or because it's a pleasant, nice thing to do, but because it's what the evidence and the law and your oath require of you.  Not because you like me or don't like me, like Mr. Eagan, don't like Mr. Eagan.  The evidence and the law and your oath require it.  Mr. Eagan will have a chance to make a closing argument to you, as well. Please give him the same careful and critical attention that you're giving me, bearing in mind that what we say isn't evidence.  It's designed to help you. If it does, take it, use it.  If it doesn't throw it away.  In the final analysis, it's the evidence and the law and your own**

common sense and judgment that lead you to the truth.  Thank you.

(Ex. E, p.739-740).  Mr. Williams says that by this language the state in effect ordered the jury to find him guilty.

### State Court Decision

Mr. Williams presented this claim to the state court in his motion for post-conviction relief.  The Rule 3.850 court rejected it, finding that there was nothing improper in the prosecutor's argument, and that counsel's performance was not deficient because there was nothing to which he could have objected successfully (ex. T, p. 221-22).

### Federal Review of State Court Decision

In order to succeed on this claim, petitioner must show, first, that the prosecutor's behavior was improper.  If the prosecution's behavior was not improper, there was no basis upon which counsel could object.  It is long established Supreme Court law that prosecutors must refrain from improper methods calculated to produce a wrongful conviction; they may strike hard blows but are not at liberty to strike foul ones.  *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 74 L.Ed.2d 1314 (1935). "A lawyer shall not . . . state a personal opinion as to . . . the credibility of a witness . . . or the guilt or innocence of an accused" and shall not "use arguments calculated to inflame the passions or prejudices of the jury."  *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (citing Model Rules of Professional Conduct, Rule 3.4(e) (1984);  Code of Professional Responsibility, DR 7-106(C)(4) (1980);  ABA Standards for Criminal Justice:  3-5.8(b) (2nd Ed. 1980)).

In applying the various professional standards to the conduct of attorneys who appear before them, courts must not lose sight of the reality that "[a] criminal trial does not unfold like a play with actors following a script." *United States v. Young*, 470 U.S. 1, 10, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985) (quoting *Geders v.*

*United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976)).  "[I]n the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be, prejudicial to the accused."  *Id.* (*citing Dunlop v. United States*, 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799 (1897)).  However, inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, the remarks must be examined within the context of the trial.  *Young,* 470 U.S. at 11, 105 S.Ct. at 1044.  And not every remark that stings is improper.  "In closing argument, a prosecutor is not prohibited from making 'colorful and perhaps flamboyant' remarks if they relate to the evidence adduced at trial."  *United States v. Mock*, 532 F.3d 1299, 1302 (11th Cir. 2008) (*quoting United States v. Jacoby*, 955 F.2d 1527, 1541 (11th Cir. 1992).

This court has read the entire trial transcript.  The above-quoted part of the prosecutor's argument was the conclusion of his summation.  Contrary to Mr. Williams' contention, the prosecutor did not tell the jury that they had to find Mr. Williams guilty, or that their oaths required it.  He argued that the defendant was guilty.  The Rule 3.850 held that there was nothing objectionable about what the prosecutor said, and that conclusion is supported by the record.  Because counsel cannot be found deficient for failing to make a meritless objection, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Mr. Williams is not entitled to federal habeas relief, and the writ should not issue.

3.  Failure to act when informed that a juror was asleep

Mr. Williams contends that a juror, Mr. Herd, who became foreman, was asleep during the trial.  A family member brought this to the attention of defense counsel, but nothing was done about it.

State Court Decision

*Case No: 4:08cv192/SPM/MD*

This claim was presented in Mr. Williams' motion for post-conviction relief. The Rule 3.850 court heard evidence, including testimony from Mr. Williams' stepmother, who testified that Mr. Herd was asleep. Mr. Herd testified that he was not asleep. He said that he had back problems and changed his position often because the chairs were uncomfortable. He sometimes leaned forward and closed his eyes, but he was never asleep. The Rule 3.850 court credited Mr. Herd, and found that there was insufficient evidence to support a claim that Mr. Herd was sleeping (ex. T, pp. 222-30).

### Federal Review of State Court Decision

The Rule 3.850 court found as fact that Mr. Herd was not sleeping. This court gives deference to that factual finding. Mr. Williams argues that because Mr. Herd had back problems, and because he admitted that he took a muscle relaxer, Flexeril, and because a common side effect of Flexeril is drowsiness, this court should disregard the fact finding by the state court and hold to the contrary. The Rule 3.850 court heard live testimony and made a credibility determination. Mr. Williams' argument is insufficient to overcome the presumption of correctness by clear and convincing evidence, 28 U.S.C. § 2254(e)(1). In light of the state court's finding that Mr. Herd was not asleep, it was not objectively unreasonable to conclude that Mr. Williams established neither deficient performance nor prejudice under *Strickland*. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*. Mr. Williams is not entitled to federal habeas relief, and the writ should not issue.

### 4.   Failure to investigate and call witnesses

Mr. Williams next contends that counsel was ineffective for failing to call Alfred Jones and Ivan Campbell. Williams met Jones in jail, and learned that Jones had obtained a statement from Campbell (one of the five individuals involved in the murder of Mr. Harper) in which he recanted his earlier statement that Mr. Williams

was involved.

### State Court Decision

The Rule 3.850 court heard evidence on this issue.  It found that counsel's decision not to call the witnesses was sound trial strategy.  Mr. Campbell had given the police a statement, had testified at a deposition, and had given the recantation statement.  All were different.  Mr. Jones was a multi-convicted felon.  The Rule 3.850 court reasoned that putting these witnesses on would have been counterproductive.

### Federal Review of State Court Decision

This court will defer to the state court's factual finding that counsel's decision not to call these witnesses was trial strategy, because it is supported by the record and Mr. Williams has not overcome the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The court also finds that Mr. Williams has failed to show that the strategy was unreasonable.  He argues that putting a convicted felon on the stand is not necessarily a bad idea, and points to the fact that Mr. Wondaferow fit that description yet was the state's star witness.  That alone proves nothing.  Mr. Jones could have testified, if his testimony was admissible, which is questionable, that Mr. Campbell told him Mr. Williams was not involved.  But that was just one of Mr. Campbell's multiple versions of the events.  He had also implicated Mr. Williams in his first statement to police.  This supports the conclusion that using Campbell and Jones as witnesses would have been unproductive at best, and likely counterproductive.  Counsel's decision not to call these witnesses was "reasonable enough to fall within the wide range of professional competence . . . ." *Provenzano*, *supra*.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Mr. Williams is not entitled to federal habeas relief, and the writ should not issue.

5.     Failure to object to inadmissible hearsay testimony, thereby violating petitioner's right to confront the witnesses against him

Mr. Williams next contends that counsel should have objected to Mr. Wondaferow's testimony concerning the following statements of other, non-testifying, co-defendants: (1) Eric Thompson's statement that Mr. Williams owned the .38 revolver, (2) Reginald Kitchen's statements bragging about robbing a drug dealer, (3) Ivan Campbell's statement that Mr. Williams wanted to buy marijuana, and (4) Campbell's phone call to Mr. Harper and subsequent statement that Harper was soft, and the ensuing conversation concerning robbing him.  Petitioner contends counsel should have objected on the grounds that Wondaferow's testimony was inadmissible hearsay and deprived Mr. Williams of his right to cross-examine witnesses and confront his accusers.

### State Court Decision

The Rule 3.850 court found that the statements complained of were admissible under Florida law, and that there was nothing to which counsel could have objected. The court also found that counsel did not object for tactical reasons:  objecting too often is often counterproductive (ex. T, p. 234).

### Federal Review of State Court Decision

There are two reasons Mr. Williams is not entitled to relief here.  First, to the extent Mr. Williams asserts counsel should have objected on Confrontation Clause grounds, that aspect of the claim is procedurally defaulted.  It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the

federal nature of the claim.  *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on

which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.  With regard to this statement, the Eleventh Circuit stated in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting

> *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598
> (1986)).  This is consistent with settled law established by the Supreme
> Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a
> habeas applicant to do more than scatter some makeshift needles in the
> haystack of the state court record.'"

*Id.*, 416 F.3d at 1302-03 (citations omitted).

The Eleventh Circuit, prior to *Duncan*, had broadly interpreted the "fair presentation" requirement.  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d

1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

In the instant case, Mr. Williams raised a claim of ineffective assistance of counsel in his motion for post-conviction relief, arguing that counsel was ineffective for failing to object on hearsay grounds because the testimony did not meet any of the exceptions to the hearsay rule. He also argued that Mr. Wondaferow's testimony was untrue and unreliable, and counsel could have cast doubt on the testimony by calling other witnesses (ex. Q, pp. 20-24). Mr. Williams mentioned his Sixth Amendment right of confrontation in passing, but cited no federal cases and made no effort to connect counsel's conduct to the denial of that right. In short, he has now changed the legal theory upon which he claims his counsel was ineffective.

"'[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously.'" *Ogle v. Johnson*, 488 F.3d 1364, 1368 (11th Cir. 2007) (quoting *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992).  To satisfy the exhaustion requirement, petitioner must have presented the instance of ineffective assistance that he now asserts in his federal petition "such that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation."  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal quotation marks omitted).  Mr. Williams did not present his confrontation theory in such a way that the Rule 3.850 court was put on notice that a separate constitutional basis was being argued.  The underlying constitutional issue presented here - the denial of the right of confrontation - is therefore defaulted.

Any further attempt at exhaustion in Florida courts would be futile because this claim would be untimely and procedurally barred under Florida law.  *See* Fla. R. Crim. P. 3.850(b) and (f); *Spaziano v. State*, 545 So.2d 843, 844 (Fla.1989) (holding that second 3.850 motion must be summarily denied where first motion raised claim of ineffective assistance of counsel, second motion sought to raise additional grounds for that ineffectiveness, and second motion did not allege defendant was precluded from asserting the additional grounds in the first motion); *Christopher v. State*, 489 So.2d 22 (Fla. 1986) (holding that "where an initial motion for post-conviction relief raises the claim of ineffective assistance of counsel, the trial court may summarily deny a successive motion which raises additional grounds for ineffective assistance of counsel); *Foley v. State*, 979 So.2d 1181, 1182 (Fla. 3d DCA 2008) (holding that post-conviction movant's claim of ineffective assistance of counsel was both untimely and procedurally barred, where claim was filed more than two years after judgment and sentence became final and could have been raised in one of movant's prior motions for post-conviction relief).

Mr. Williams has made none of the requisite showings to excuse his default.

He has not alleged cause for his default, and has presented no new evidence of his factual innocence.  Therefore, this aspect of the claim is defaulted, and it should not be considered in this court.

To the extent petitioner claims counsel was ineffective for failing to object on hearsay grounds because the testimony did not meet any of the exceptions to the hearsay rule, he is not entitled to federal habeas relief.   The Rule 3.850 court concluded that the matters complained of were statements made by various participants in the course of a conspiracy, and therefore were properly admissible under Florida law.  *See* Fla. Stat. § 90.803(18)(e)(2001)(statement by a co-conspirator admissible).

Mr. Williams' argument that the state court unreasonably applied *Strickland* obviously depends upon this court determining counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law.  That is not something this court will do, as federal habeas courts must defer to state courts' legal conclusions on matters of state law.  In *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit addressed similar issues.   In *Herring*, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial.  *Id.* at 1354-55.  The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient. *Id.*  The Eleventh Circuit held:  "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id.* (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, as in *Herring*, the state court has answered the question of what would

have happened had Mr. Williams' counsel objected to the testimony on hearsay grounds.  The objection would have been overruled.  Therefore, counsel cannot be faulted for having failed to make it.  And since counsel would have failed had he acted as Mr. Williams contends he should have, Williams cannot show prejudice.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Mr. Williams is not entitled to federal habeas relief, and the writ should not issue.

6.      Filing facially insufficient motion to disqualify judge

Mr. Williams next contends that counsel was ineffective when he filed a motion to disqualify the trial judge.  The judge denied the motion as facially insufficient because it was not signed by Mr. Williams as Florida law requires.  Mr. Williams argues that if the motion had been properly filed, the outcome of the case would have been different.

State Court Decision

Mr. Williams presented this claim in his motion for post-conviction relief, arguing that counsel filed a motion to disqualify because he had heard the trial judge (before trial) say that she believed Mr. Williams was the shooter, but that the motion was denied through deficient performance on counsel's part.  Defense counsel testified at the Rule 3.850 hearing that the motion was facially insufficient, but that the trial judge did not treat him unfairly.  The Rule 3.850 court credited this testimony, found that the trial transcript did not indicate any unfairness on the part of the trial judge, and found that there had been no showing of prejudice, because *if* the trial judge had recused herself, the outcome would not have been different.

Federal Review of State Court Decision

Mr. Williams points to no specific instance in the record that indicates bias on the part of the trial judge, and this court has not found any.  There is nothing in the state court record that indicates the trial judge was in any way biased.  Mr. Williams

cannot show that he was prejudiced other than by his own conclusory allegations. This is not enough.  Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.  *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971).[5] Thus, "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.  *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980).  the state court reasonably applied *Strickland* when it determined that petitioner failed to establish prejudice.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra.*  Mr. Williams is not entitled to federal habeas relief, and the writ should not issue.

7.      Failure to object to jury instructions

For his last claim for relief Mr. Williams contends the jury instructions were confusing and misleading in the following regard:

> The trial court ultimately instructed the jury that "there are two ways" to convict on First Degree Murder, premeditated murder and felony murder.  The trial court explained that in order to convict on First degree Felony Murder, the jury would have to determine whether the petitioner actually possessed a firearm during commission of the offense.  However, the written instruction for felony murder makes no mention that the jury had to find that the petitioner possessed a firearm, but included in the written instruction for attempted robbery . . . is the instruction that "if you find the petitioner guilty of First degree felony murder, you will need to determine whether the petitioner actually possessed a firearm during the commission of the offense."

(Doc. 5, Supp. Mem. of Law, p. 24) (citations to record omitted).  Mr. Williams further

---

[5]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

contends the jury instructions were erroneous and confusing because they included an instruction for attempted robbery when he was not charged with that offens. And finally, he contends that since there was evidence of only one firearm in the case, and the jury found that he possessed a firearm but did not discharge it, he cannot have been guilty of premeditated murder.

### State Court Decision

The Rule 3.850 court held that the jury instructions were sufficient under Florida law; therefore counsel's failure to object was not deficient.

### Federal Review of State Court Decision

Again, Mr. Williams' argument that the state court unreasonably applied *Strickland* obviously depends upon this court determining counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law when if found the jury instructions sufficient. This court will not second guess the state court's interpretation of state law. Moreover, even if this court were to review the state court's ruling on the sufficiency of the instructions under state law, this court can discern no error in the instructions. Under Florida law, first degree murder is defined as the unlawful killing of a human being committed either by premeditation, Fla. Stat. § 782.04(1)(a)(1)(2001) or while participating in a felony, in this case armed robbery, Fla. Stat. § 782.04(1)(a)(2)(d)(2001).  The jury was instructed on these alternative grounds and found Mr. Williams guilty.  There was nothing confusing about the instructions.

The only confusion is in Mr. Williams' argument.  Mr. Williams was charged in Count I with first degree murder with a firearm, and in Count II with armed robbery with a firearm.  Contrary to his assertion, the jury was not instructed on attempted robbery on Count II as a lesser-included offense.  (Ex. E, pp. 669-70, 799-803).  The definition of attempted robbery was given in connection with the first degree felony murder instruction, as follows:

[B]efore you can find the defendant guilty of first degree felony

murder, the State must prove the following three elements beyond a reasonable doubt.  That Kelly Harper is dead; that the death occurred as a consequence of and while Brian Williams was engaged in the commission of robbery or attempted robbery; and that Brian Williams was the person who actually killed Kelly Harper, or that Kelly Harper was killed by a person other than Brian Williams but both Brian Williams and the person who killed Kelly Harper were principals in the commission of robbery or attempted robbery.

In order to convict of first degree felony murder, it is not necessary for the State to prove that the defendant had a premeditated design or intent to kill.  In considering the crimes of robbery and attempted robbery as they are referred to above, the jury will use the definition of robbery that's set forth a little later in these instructions.  And I'll read that to you in just a moment.  But I'll give you the definition of attempted robbery right now.

(Ex. E, p. 794).  After defining attempted robbery, the judge, as part of his continuing instructions for first degree felony murder, advised the jury that in order to find Mr. Williams guilty of first degree felony murder <u>with a firearm</u> they would need to find that he possessed a firearm during the commission of the offense. (*Id.*, p. 795).  The instruction concerning possession of a firearm was given as part of the first degree felony murder instructions, not in a separate instruction for attempted robbery.

Furthermore, the definition of attempted robbery was required to be included in the felony murder instruction, regardless of whether petitioner was charged with the offense, because robbery was the felony underlying the felony murder charge. As respondent points out, the state may lawfully, but is not required to, charge the underlying felony for felony murder.  *State v. Enmund*, 476 So.2d 165, 167-68 (Fla. 1985) (holding that defendant could be convicted for robbery and also for felony first-degree murder for which robbery was the underlying felony, since the underlying felony is not a necessarily lesser included offense of felony murder). The fact that Mr. Williams was also charged with robbery in Count II of the indictment does not affect the instruction with regard to the entirely separate offense of first-degree murder charged in Count I.  The only reason the jury was not

instructed on attempted robbery on Count II as a lesser-included offense was because defense counsel requested that it not be. (Ex. E, p. 669-670, 799-803).  And finally, even if the jury had found Mr. Williams not guilty of a completed robbery on Count II, as a matter of Florida law it could still have found him guilty of first-degree felony murder with attempted robbery as the underlying felony on Count I.  *See* § 782.04(1)(A)2.d., Fla. Stat. (2000).  It was neither erroneous nor confusing for the jury to be given the definition of attempted robbery.

As the state court determined, the instructions were accurate and sufficient under Florida law.  Therefore, Mr. Williams cannot establish deficient performance or prejudice based on counsel's failure to object.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Mr. Williams is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended 28 U.S.C. 2254 petition for writ of habeas corpus (doc. 5), challenging the conviction and sentence in *State of Florida v. Brian B. Williams* in the Circuit Court of Leon County, Florida, case no. 2000-1925, be DENIED.

2.  That petitioner's motion for summary judgment (doc. 22) be DENIED.

3.  That the clerk be directed to close the file.

At Pensacola, Florida, this 1st day of April, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).